## TROUTMAN V. EGGLESTON *et al.*

In an action to rescind an exchange of land on the ground of fraudulent misrepresentations as to the value of the land received by plaintiff, evidence considered, and held sufficient to support a jury finding that plaintiff was misled.

(Opinion filed July 12, 1905.)

Appeal from circuit court, Beadle county; Hon. CHARLES S. WHITING, Judge.

Action by Isaac N. Troutman against H. G. Eggleston and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Crawford & Taylor,* for appellants.

*Henry C. Hinckley* and *Kelly & Chamberlain,* for respondent.

FULLER, J. On the 5th day of November, 1903, plaintiff transferred to the defendant Malinda N. Eggleston, subject to a mortgage for $675, 477 acres of Beadle county land, together with 83 head of mixed cattle, in exchange for two quarter sections of Kansas land, and $1,700 paid in cash by her authorized agent, the defendant H. G. Eggleston. This action, instituted to recind the entire transaction on the ground of fraudulent representations, resulted in favor of plaintiff on all the issues, and the defendants have appealed. Both of them, as well as their two sons, who apparently initiated the bargain resided at the time in the immediate vicinity of the Beadle county land, and were quite familiar with its character and value, while respondent had never seen the Kansas land, and knew nothing concerning it, except what appellants told him during the negotiations.

Conformable to answers of the jury given in response to

special interrogatories submitted at the conclusion of all the evidence, the court made the following findings of fact: "The court finds that on the 5th day of May, 1903, the date of the exchange of said property by plaintiff and defendants, the actual market value of plaintiff's Beadle county lands, hereinbefore described, was $4,800; that the actual market value of the plaintiff's 83 head of cattle was $1,228, and the value of defendant's Meade county land was $800. The court further finds that on the 5th day of May, 1903, in the city of Huron, Beadle county, South Dakota, within a very short period of time, and just prior to the execution and delivery of the deeds aforesaid, the defendant H. G. Eggleston, in his own behalf and in behalf of his codefendant, and while acting as her agent, did wrongfully represent to the plaintiff that one of the quarter sections of said Meade county land had sold for $3,200 in the year 1902; that this representation thus made by said defendant to the plaintiff was material, and influenced the plaintiff to execute and deliver to Miranda N. Eggleston his deed to said lands in Beadle county, and to deliver to her his 83 head of cattle; that this statement and representation made to defendant, to wit, 'that one quarter of said land in Meade county, Kansas, had sold in the year 1902 for $3,200,' was wholly false, and that both the defendants knew it to be false at the time it was made to the plaintiff by H. G. Eggleston, and intended to deceive plaintiff thereby; and that plaintiff relied upon this false statement, and, believing it to be true, made the exchange of properties aforsaid. The court further finds that, at the time said false representation was made, defendants well knew that plaintiff had never been in Meade county, Kansas, and had never seen said lands; that nothing whatever was brought to

plaintiff's notice by the defendants before the consummation of said exchange of properties by which plaintiff might have ascertained the falsity of said representation, excepting certain tax receipts, which were delivered merely to show that taxes were paid."

Counsel for appellants assume in their brief, for the sake of argument only, that the false representation that one of the quarter sections of said land had sold for $3,200 in the year 1902 was made by their clients, but insist that the tax receipts concurrently delivered to respondent were sufficient to cause a reasonably prudent man to know that such representation was false, and therefore he was not justified in believing the same. While respondent stated explicitly that he relied upon such representation, and testified in substance that, by reason of his previous talk with appellants' sons, he concluded to make the trade before seeing H. G. Eggleston, it affirmatively appears that the sons were wholly without authority to represent their mother, who owned the land, and that respondent was in no manner bound by anything occuring prior to meeting appellants at their home, in the city of Huron, where the exchange of property was consummated. Concerning what was said and done at that meeting, respondent testified in part as follows: "I had a conversation with Mr. Eggleston —the old man—the day the deal was made. It was at his house. He stated that the land down there was sold one year for $1,600, and one year for $3,200. He was talking about the land he was trading me. He said 'year before last' and 'last year.' That would be 1901 and 1902. The time he was talking to me was in 1903. He said the land sold the year before and the year before that, one for $1,600, and one for $3,200;

that, if he could get the boys to go down, he would not trade the land for three times what I had here. * * * I did not see this land before the sale. That same day he said he would like to take me down and show me this land. It was all done in one day. This deal was closed up and deed transferred about an hour and a half after I first had a talk with this defendant, Mr. Eggleston. * * * The first time I went into the house, on the 5th day of May, 1903, Homer Eggleston said one quarter of that land in Kansas sold for $1,600. The way he came to say that was, I asked him what land was worth down there. I asked him what land was selling at. I asked him what the land was worth that I was trading for. He said he didn't know what it was worth, but it sold in 1901 for $1,600 and in 1902 for $3,200. Yes, sir; Homer told me this land was the identical land which I traded for in Kansas, selling in 1901 for $1,600, and in 1902 for $3,200. I do not know who owned that land down there. I never knew until the 25th of April or the 26th that they had any land down there at all. I do not think I ever saw the defendant's Exhibit A which you showed me before. That is Marinda Eggleston. [Meaning the grantee in Exhibit A.] That purports to be a deed from Porter to Marinda Eggleston. They turned that deed over to me at the time they made this trade. It was the patent they turned over to me. I suppose that deed was in the papers, but I never read that deed over. I looked at some tax receipts that morning when first I was there with Parker Eggleston, before I went to see McLivaine—only just some tax receipts. I did not see that deed and read it over before I bought this land. I am sure about that. I seen some tax receipts and read them over. I did not have an abstract to this tract of

land. They just gave me tax receipts. I did not know Mrs Eggleston had any title to this Kansas land. They did not furnish me an abstract. I furnished them an abstract · to all my land. After the deed was made and executed they handed it to me. It was not handed to me with tax receipts that morning. The tax receipts seemed to be on this land down there in Kansas. I think they were for the years 1901— I think 1900 and 1901. These tax receipts showed that the taxes had been paid for these years by Mr. Eggleston."

·On account of the fact that respondent had never seen the land, and was persistently urging appellants to give him an express warranty as to its value, the prefatory statement of H. G. Eggleston that he would not trade it for three times what they were getting, if he could persuade the boys to go down there, was well calculated to possess his victim with confidence and inspire belief in the false assurance that the roughest one-half of the tract had recently sold for a price equal to four times what the undisputed evidence shows it all to be worth. Respondent testified that he relied upon what Eggleston told him the land had sold for, and that he did not think he would have made the trade, had no such statement been made. This representation, which related to a material fact, was plainly false, and was made for the purpose of deceiving respondent, who had no other means of knowledge, while appellants were fully advised as to all the property under consideration, and must have realized such inequality when taking advantage of the same.

In view of the fact that the tax receipts were delivered and received in lieu of an abstract of title to the Kansas land, and for the avowed purpose of showing that the taxes had been

paid, their evidential character as to the value of the premises is too remote to merit favorable consideration; and it cannot be said that the evidence is insufficient to justify the facts found by the jury, and concurred in by the trial court, before whom all the parties appeared in person.

After a studious examination of every assignment of error urged by counsel for appellants in favor of a reversal, our conclusion is that no errors of law occurred at the trial, and the judgment appealed from is affirmed.